## Jack *versus* Woods.

29 | 375
19 SC ¹566
29 | 375
22 SC ⁵180

Before secondary evidence can be given of a lost deed, it is necessary to prove to the court that the deed was executed and delivered, and if the person whose title is to be affected by it was not named in the deed, and did not sign it, that such person was in some way a party to the deed.

Where one joint tenant, by articles of agreement, sold the land of himself and co-tenants, and took a mortgage to himself to secure the purchase-money, and afterwards under proceedings on the mortgage purchased the premises at sheriff's sale, the effect was merely to cancel the unsuccessful sale, and not to vest a new title in such co-tenant on his own account.

The preliminary proof necessary to admit secondary evidence of the existence and execution of a lost deed, must be based on the acts and declarations of the party whose title is to be affected by such evidence.

The recital in a mortgage given to one co-tenant that another co-tenant had executed a deed, is not evidence of the fact as against the latter.

*Quære,* When the deposition of a witness has been taken in a cause, and afterwards when called in court his memory of the transaction fails, whether his deposition can be read to the jury by the party calling him?

ERROR to the District Court of *Allegheny county.*

This was an action of ejectment brought by Thomas Woods against Robert and David Jack, to recover the possession of the one undivided fourth part of a tract of land in Mifflin township, Allegheny county, containing 318 acres.

[Jack *v.* Woods.]

The plaintiffs and defendants both claimed under a deed dated 31st October, 1803, from Catharine Thompson to Mary Thompson, for life, with remainder to her son William Irwin Thompson, in fee. William Irwin Thompson died intestate, and without issue, between the years 1804 and 1806, leaving his mother, the said Mary, and four brothers and sisters, to wit: Robert C., Edward, Catharine, and Francis surviving. Mary, the mother of these parties, died some four or five years ago. The plaintiffs claimed by virtue of a deed from Frances for her supposed interest, dated September 3, 1854.

The defendants, who were tenants of James H. Hays, claimed through him, under an alleged purchase from Robert C. Thompson, for himself and as agent or attorney of his co-heirs, by articles of agreement between the said R. C. Thompson and a certain John Neel, dated the 27th March, 1819. The defendants offered evidence that John Neel had entered into possession under the articles, and alleged that a deed had been executed by all the parties interested, including Frances Thompson, under whom the plaintiffs claimed title, conveying the interest of Francis to Neel. To show the assent of Frances, under whom the plaintiffs claimed, the defendants offered, in the first place, a copy of the articles, in connexion with evidence that Frances was present and consenting thereto, and went out of possession in accordance with the articles. As evidence of the existence of a deed from Frances, they also offered a mortgage executed by Neel to R. C. Thompson, reciting a conveyance by Frances, and the record of an action of *scire facias*, upon the mortgage, with the charge of the court therein; also the record of an action of *assumpsit* upon the articles, by Robert C. Thompson against said John Neel, with a bill of exceptions filed therein, and Mr. Fetterman's notes of testimony, or bill of exceptions, certified by the presiding judge; and also the record of an action of ejectment between the same parties, with the judge's notes of testimony therein. All these offers were overruled, and the jury instructed by the court to render a verdict in favour of the plaintiffs.

John Neel was called by the defendants as a witness on the trial, to prove the existence of the deed from Frances Thompson and others to himself; and after having given his evidence orally in court, the defendants, alleging that his memory had failed by reason of age and infirmity, offered to read his deposition taken in the cause in 1854. This was objected to by the plaintiff and rejected by the court.

The defendants showed that the title and possession were acquired by Neel in 1819, and subsequently divested, by virtue of a sheriff's sale, in 1827, to R. C. Thompson, upon his own mortgage; and that the property was again conveyed by him to George and John Kirkpatrick, who entered in 1828, and together with

[Jack *v.* Woods.]

those claiming under them, have continued in possession until the present time.

The bills of exception taken upon the rejection of the several offers of evidence by the defendants, and the instruction to the jury, comprise the errors assigned.

*Williams* and *Sproul,* for plaintiff in error.

*Burke* and *Hall,* for defendant in error.

The opinion of the court was delivered by

LOWRIE, J.—It is the title that descended to Frances Thompson, that is in dispute, both plaintiff and defendant claiming it. The plaintiff shows a regular conveyance of it to him, and the defendant offers to show a prior conveyance to persons whose title he now holds; but the documents are lost, and he is compelled to resort to secondary evidence.

We may assume that there was an article of agreement between R. C. Thompson and John Neel, by which the former agreed to convey to the latter the whole title, including that of Frances. This is, of course, insufficient to affect the title of Frances, unless she, in some effectual mode, was party to it. In relation to this instrument, therefore, it was necessary to prove to the court that it was executed and delivered, and that Francis was a party to it, though not named in it, nor signing it, before secondary evidence could be given of its contents.

We do not discover any evidence sufficient to make her a party to it. None was offered except to show that she was present when money was paid on it, and made no objection; but the proof of this entirely failed.

But even if the proof had been full, it would not have availed; for R. C. Thompson took a mortgage to himself to secure the purchase-money of that agreement, and afterwards pursued it to judgment and sale of Neel's right, and became the purchaser himself; and the effect of this was simply to conceal his unsuccessful sale, and not to get a new title on his own account.

The defendant also relied on a deed to Neel, said to be lost. We may assume that there was evidence of the existence of this deed; but we see no evidence of its execution by Frances. R. C. Thompson and Neel think it was never delivered, and neither of them can tell whether Frances had signed it or not; and certainly her participation in the transaction must be made out, by evidence based on her own acts, and not on R. C. Thompson's. The recital in the mortgage does not prove it, for she was not a party to that. She cannot be called a *privy* to the transaction

[Jack *v.* Woods.]

until the principal question is proved : her joining in the agreement or in the deed.

When a witness has given his deposition in a cause, and afterwards his memory of the transaction fails, we are not clear that the party may not read his deposition. But the exclusion of it here did no harm. Its only use was to show to the court that a deed had been executed and delivered by Frances, and this it does not show. It tells of the delivery of the deed; but the witness does not profess to have seen Frances execute it, or to have heard her acknowledge it, or to have known her signature. An essential matter is, therefore, still wanting before the deed or evidence of its contents could go to the jury.

There is a little confusion in the case arising from the fact that, on the trial the parties did not properly distinguish between the preliminary evidence for the court, and that which was to go, in the first instance, to the jury; but no injury was done by this. After all his efforts, the defendant failed in presenting any evidence of title to the jury, and the court was right in saying so.

Judgment affirmed.